ROBERT W. THOMPSON, Esq. (California SBN 106411)
*Admitted Pro Hac Vice*
**CALLAHAN, THOMPSON, SHERMAN**
**& CAUDILL, LLP**
2601 Main Street, Suite 800
Irvine, California 92614
Tel: (949) 261-2872
Fax: (949) 261-6060
Email: rthompson@ctsclaw.com

Attorney for Plaintiff,
**HAYDEN C. ROLETTER**

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| HAYDEN C. ROLETTER, an individual, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| THE UNIVERSITY OF ARIZONA; ARIZONA BOARD OF REGENTS; THETA CHI FRATERNITY, INC., a New York corporation; TYLER J. AUSTIN, an individual; BLAKE M. BRENTON, an individual; GREGORY G. LASALLE, an individual; GABRIEL V. LOMBARD, an individual; GEORGE P. LYMBERIS, an individual; ALEXANDER M. MERRYWELL, an individual; BROCK R. NEUHAUS, an individual; MATTHEW J. PALMIERI, an individual; BRYCE C. PIRO, an individual; LUKE R. RUSNAK, an individual; CONNOR J. SEMENKO, an individual; SCOTT L. SLEPIAN, an individual; and ALI TAVAKOLY, an individual. | 1. **VIOLATION OF TITLE IX** <br> 2. **NEGLIGENCE (AGAINST THE UNIVERSITY OF ARIZONA AND ARIZONA BOARD OF REGENTS)** <br> 3. **NEGLIGENCE (AGAINST THETA CHI FRATERNITY, INC.)** <br> 4. **NEGLIGENCE (AGAINST "OFFICER DEFENDANTS")** <br> 5. **NEGLIGENCE (AGAINST TYLER AUSTIN AND "OFFICER DEFENDANTS")** <br> 6. **NEGLIGENT SUPERVISION** <br> 7. **BATTERY** <br> 8. **ASSAULT** <br> 9. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** <br> 10. **NEGLIGENCE PER SE** |
| Defendants. | |

COMES NOW, Plaintiff HAYDEN ROLETTER, by and through undersigned counsel, for his Complaint against Defendants, states and alleges as follows:

## JURISDICTION AND VENUE

1.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action involves claims arising under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

2.      This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367, as they are so related to Plaintiff's claims made under Title IX, 20 U.S.C. § 1681, *et seq.,* that they form part of the same case or controversy under Article III of the Constitution of the United States.

3.      Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District with respect to the civil action in question.

4.      All conditions precedent have been met, including timely service of a notice of claim pursuant to ARS. § 12-821.01. A copy of the notice of claim is attached as **Exhibit A.**

## PARTIES

5.      Plaintiff Hayden Roletter is a citizen of Orange County, California. At the time of the events described herein, Plaintiff was temporarily living in Pima County, Arizona.

6.      Defendant University of Arizona ("University") claims to be an institution of higher learning and is owned, operated, maintained and controlled by the State of Arizona or by an agency, board, department or bureau thereof.

7.      Defendant Arizona Board of Regents is a governmental entity that acts through its employees, agents, and independent contractors to supervise and direct the policies and activities of the University.

8.      Defendant Theta Chi Fraternity, Inc. ("Theta Chi") is a non-profit corporation organized in the State of New York with its principal place of business in Carmel, Indiana. Theta Chi is an established national fraternity that was originally founded at Norwich University in 1856. Theta Chi has over 150 active chapters throughout the United States, which includes or included

1  chapters at the University of Arizona, Northern Arizona University, and Arizona State University.

2  The chapter at the University of Arizona is known as the Beta Iota Chapter ("Chapter").

3      9.     The Beta Iota Chapter was at all relevant times an unincorporated association

4  chartered, governed, managed, and controlled by its principal member, Theta Chi Fraternity, Inc.

5      10.    Defendant Blake Brenton ("Brenton") is a citizen of the State of Texas. Brenton

6  was at all relevant times the Chapter Officer of President of the Beta Iota Chapter.

7      11.    Defendant Gabriel Lombard ("Lombard") is a citizen of the State of California.

8  Lombard was at all relevant times the Chapter Office of Vice President of the Beta Iota Chapter.

9      12.    Defendant Ali Tavakoly ("Tavakoly") is a citizen of the State of Illinois. Tavakoly

10 was at all relevant times the Chapter Officer of Vice President of Health and Safety of the Beta

11 Iota Chapter.

12     13.    Defendant Connor Semenko ("Semenko") is a citizen of the State of Nevada.

13 Semenko was at all relevant times the Chapter Officer of Secretary of the Beta Iota Chapter.

14     14.    Defendant Jacob LaSalle ("LaSalle") is a citizen of the State of Arizona. LaSalle

15 was at all relevant times the Chapter Officer of Treasurer of the Beta Iota Chapter.

16     15.    Defendant Alexander Merrywell ("Merrywell") is a citizen of the State of

17 Washington. Merrywell was at all relevant times the Chapter Officer of First Guard of the Beta

18 Iota Chapter.

19     16.    Defendant Brock Neuhaus ("Neuhaus") is a citizen of the State of California.

20 Neuhaus was at all relevant times the Chapter Officer of Second Guard and the Risk Management

21 Chairman of the Beta Iota Chapter.

22     17.    Defendant Bryce Piro ("Piro") is a citizen of the State of Arizona. Piro was at all

23 relevant times the Chapter Officer of Marshal of the Beta Iota Chapter.

24     18.    Defendant George Lymberis ("Lymberis") is a citizen of the State of Washington.

25 Lymberis was at all relevant times the Chapter Officer of Chaplain of the Beta Iota Chapter.

26     19.    Defendant Matthew Palmieri ("Palmieri") is a citizen of the State of Pennsylvania.

27 Palmieri was at all relevant times the Chapter Officer of Social Chairman of the Beta Iota Chapter.

28     20.    Defendant Luke Rusnak ("Rusnak") is a citizen of the State of Arizona. Rusnak was

at all relevant times the Chapter Officer of Recruitment Chairman of the Beta Iota Chapter.

21.     Defendant Scott Slepian ("Slepian") is a citizen of the State of Arizona. Slepian was at all relevant times the Chapter Officer of Scholarship Chairman of the Beta Iota Chapter.

22.     Defendants Brenton, Lombard, Tavakoly, Semenko, LaSalle, Merrywell, Neuhaus, Piro, Lymberis, Palmieri, Rusnak, and Slepian are collectively referred to as "Officer Defendants".

23.     Defendant Tyler Austin ("Austin") is a citizen of the State of New Jersey. At the time of the events described herein, Austin was temporarily living in Pima County, Arizona. Austin was at all relevant times a member of the Beta Iota Chapter and a student at the University.

## GENERAL ALLEGATIONS

24.     Plaintiff realleges and incorporates by reference all allegations in paragraphs 1-23, as though fully set forth therein.

25.     Plaintiff was a freshman at the University for the 2018/2019 academic year.

26.     Plaintiff pledged to the Beta Iota Chapter of Theta Chi at the University in the spring semester of 2019.

27.     In the spring semester of 2019, the Chapter and members repeatedly subjected Plaintiff to outrageous hazing designed to break down Plaintiff and the other pledges. The hazing included physical abuse of pledges by Chapter officers and members, threats of violence, forced calisthenics, degrading and anti-Semitic verbal abuse, acts of servitude, forced interviews, prevention and deprivation of sleep and study time, and other conduct threatening the health and safety of Plaintiff and the other pledges. Plaintiff was required to endure hazing in order to become a member of the fraternity.

28.     Plaintiff and other pledges attended a meeting that was held on the evening of April 12, 2019 and into the morning of April 13, 2019 ("Meeting") at the fraternity house.

29.     During the Meeting, Plaintiff was subjected to relentless and violent acts of hazing by Austin and senior members of the fraternity, including without limitation verbal abuse and interrogation, forced calisthenics on broken glass and foul-smelling trash, being physically beaten, forced consumption of hot sauce, and forced relinquishment of cell phone.

30.     In the midst of the hazing acts at the Meeting, Austin filled a shot glass with El

Yucateco Habanero Sauce. The Sauce has received a Scoville scale rating of over 5,000, which is a measurement of the pungency of chili peppers. With no warning, Austin aimed the filled glass at Plaintiff's face from inches away. Austin then swung the glass to unleash the sauce into both of Plaintiff's eyes. Plaintiff immediately screamed in pain and dropped to the ground.

31.     As a result of the damage to his eyes and other hazing at the meeting, Plaintiff was visibly in pain and injured. Austin and the members of the Chapter participated in, caused, contributed to, and/or were aware of Plaintiff's degraded condition, yet they failed to provide him the care and protection he needed under the circumstances. After immediately rushing to the house bathroom to rinse his eyes and spending approximately fifteen minutes there, Plaintiff heard a loud voice scream that Plaintiff had mere minutes to get out of the bathroom. Upon Plaintiff's following of the command, Austin and the members of the Chapter did not tend to or seek help for Plaintiff's injuries, but rather continued to haze Plaintiff by forcing him to perform calisthenics on broken glass and foul-smelling trash.

32.     Plaintiff sustained serious injuries as a result of the Meeting and required immediate medical attention.

33.     Plaintiff sustained serious injuries and symptoms, including but not limited to, severe pain and sensitivity in eyes, scarring, infection, and burn to the eyes, cuts to his palms and elbows, infection in his blood, and deterioration and blurriness of vision.

34.     Plaintiff also sustained severe emotional distress, mental anguish, anxiety, depression, embarrassment, and fear of retaliation by the other fraternity members.

35.     As a direct and proximate result of his injuries and symptoms, Plaintiff was not able to return to the University to complete his freshman year. Plaintiff also fears for his safety if he was to return to the University. Plaintiff is now enrolled in another college.

36.     At all relevant times, the Constitution and Bylaws of Theta Chi stated that, "The Fraternity prohibits all physical hazing, paddling, uncalled-for humiliation, and public display in connection with Pledge education and pre-initiatory activities." The Constitution and Bylaws further stated that "The Fraternity prohibits all forms of public initiation, and pre-initiatory and initiation activities shall not be permitted to interfere in any way with the scholastic obligations or

1  class attendance of those involved" and that "The active chapters shall carry out the Fraternity's

2  policy and conform to this policy."

3     37.    At all relevant times, the Constitution and Bylaws of Theta Chi stated that the

4  officers shall share responsibility for the overall compliance of the chapter with the Bylaws, the

5  Ritual, the Bylaws of the chapter, and other applicable rules. Defendants Brenton, Lombard,

6  Tavakoly, Semenko, LaSalle, Merrywell, Neuhaus, Piro, Lymberis, Palmieri, Rusnak, and Slepian

7  were the officers of the Chapter at the relevant time. These Officer Defendants failed to ensure the

8  Chapter's overall compliance with the aforementioned rules, and are thus jointly responsible for

9  the hazing and serious injuries sustained by Plaintiff as a result.

10    38.    Additionally, since 2001, the Arizona Board of Regents and the University have

11  professed to have a strict policy that hazing by fraternities is prohibited and that students are not to

12  be hazed, compelled to haze others, or be otherwise mistreated as a condition of membership.

13    39.    The University's Hazing Policy states:

14    " "Hazing" means any intentional, knowing, or reckless act committed by a student,

15    whether individually or in concert with other persons, against another student, and

16    in which both of the following apply:

17    1.  The act was committed in connection with an initiation into, an affiliation with,

18        or the maintenance of membership in any organization that is affiliated with the

19        University; and

20    2.  The act contributes to a substantial risk of physical injury, mental harm, or

21        degradation; or causes physical injury, mental harm, or personal degradation.

22    "The University of Arizona seeks to promote a safe environment where students

23    may participate in activities and organizations without compromising their health,

24    safety, or welfare. It is therefore the University's policy that hazing is prohibited.

25    The impact of hazing activities can result in irrevocable harm to their victims,

26    victims' families, and the University community…Each organization, as well

27    as each individual, must accept the personal obligation to uphold the basic

28    community values of being just, civil, and respectful of the rights of

others…**All students, faculty, and staff must take reasonable measures within the scope of their individual authority to prevent violations of this policy."** (emphasis added.)

40.     The University, the Arizona Board of Regents, and Theta Chi knew or should have known that for years the Chapter engaged in documented dangerous hazing, unlawful service of alcohol, disruption of University activities, and other misconduct which threatened the health and safety of students. Upon information and belief, in 2015, the University conducted investigations and disciplined the Chapter over hazing violations in which new initiates were struck by paddles, an initiation tradition called "paddling."

41.     Despite this, these Defendants failed to take adequate steps to protect Plaintiff from hazing and regulate the dangerous acts of the Chapter. As a result of this, the acts continued through the date of the Meeting.

42.     On or about November 19, 2019, the University and Theta Chi announced that recognition of the Chapter had been withdrawn and that the Chapter was closed.

43.     On November 19, 2019, Theta Chi Fraternity International Headquarters issued a letter acknowledging that "[t]his action was taken following the receipt of credible reports from the University of Arizona in August and September 2019 alleging that violations of Theta Chi Fraternity's safety standards had occurred within the chapter. After a membership review led by an Alumni Probation Committee, careful examination of relevant facts determined that the chapter had engaged in actions that ran in contradiction to Theta Chi's policies, standards, and objectives." On November 20, 2019, the University issued a press release regarding the withdrawal of recognition, stating that "[t]he chief conduct violations were for hazing and causing significant harm to a new member…Chapter leaders had the opportunity to respond to the findings" and that "the Theta Chi Fraternity's international board of directors voted unanimously to revoke the local chapter's charter."

///

///

///

**COUNT 1- VIOLATION OF TITLE IX, 20 U.S.C. 1681, *et seq.***

**(Defendants University of Arizona and Arizona Board of Regents)**

44.     Plaintiff realleges and incorporates by reference all allegations in paragraph 1-43, as though fully set forth therein.

45.     Title IX states, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

46.     At all relevant times, the University and the Arizona Board of Regents, through its employees and administrators responsible for overseeing the Greek system at the University, exerted significant control over its registered fraternities, including Theta Chi. This included, without limitation, control over the recruitment, pledging, and initiation activities of its registered fraternities.

47.     The University and the Arizona Board of Regents had actual knowledge of the dangerous and serious risks facing male students seeking to participate in the educational opportunities and benefits the University provided through Greek life. Prior to Plaintiff pledging Theta Chi, these Defendants knew of repeated prior incidents of hazing of male students and misconduct exclusive to registered fraternities at the University.

48.     Upon information and belief, these Defendants responded with deliberate indifference to prior allegations of hazing by male students seeking to participate in the educational opportunities and benefits the University provided through Greek life because of gender stereotypes about men and "masculinity".

49.     Upon information and belief, because of gender stereotypes about men and "masculinity", the University and the Arizona Board of Regents, through its policies and practices, systematically treats the hazing of male students less seriously than the hazing of female students and protects female students from hazing to a greater extent than male students.

50.     These Defendants did not take immediate and effective steps to address this discrimination to prevent it from affecting male students further. Instead, these Defendants responded in a manner that disadvantaged male students' ability to access equal educational

opportunities and benefits the University provided through Greek life.

51.     As a result of these Defendants' policies and practices that treat the hazing of male students less seriously than the hazing of female students and protect female students from hazing to a greater extent than male students, these Defendants have discriminated against male students, including Plaintiff, in violation of Title IX.

52.     Because of these policies and practices, male students seeking to participate in the educational opportunities and benefits the University provides through Greek life are more vulnerable to physical, mental, and emotional harm in connection with hazing activity than female students.

53.     These Defendants had the ability to implement meaningful anti-hazing measures, to conduct thorough investigations, and to remediate known hazing activity to prevent harm to male students seeking to participate in the educational opportunities and benefits the University provides through Greek life. Instead these Defendants responded with deliberate indifference and perpetuated their policies and practices of treating the hazing of male students less seriously than the hazing of female students and protecting female students from hazing to a greater extent than male students.

54.     As a direct and proximate result of the violation of Title IX, Plaintiff was denied the ability to participate in the educational opportunities and benefits the University provides through Greek life, and sustained serious injuries, mental anguish, emotional distress, and pain and suffering, some of which may be permanent in nature.

55.     As a further direct and proximate result of the violation of Title IX, Plaintiff incurred medical expenses and other expenses in an effort to relieve injuries caused by this violation, and Plaintiff will likely incur future medical expenses and other expenses in an effort to relieve injuries caused by these Defendants.

## COUNT 2 – NEGLIGENCE

### (Defendants University of Arizona and Arizona Board of Regents)

56.     Plaintiff realleges and incorporates by reference all allegations in paragraphs 1-55, as though fully set forth therein.

57.     Since 2001, the Arizona Board of Regents and the University have represented to students such as Plaintiff and their families that the University has a strict policy that hazing by fraternities is prohibited and that students are not to be hazed, compelled to haze others, or be otherwise mistreated as a condition of membership.

58.     At all relevant times, the Arizona Board of Regents and the University exerted significant control over campus Greek life and voluntarily undertook to regulate certain dangerous conduct of its students. This regulation included, without limitation, maintaining a strict policy against hazing, repeatedly emphasizing University policy of discipline for hazing infractions, refusal to recognize certain fraternities due to violations of the Student Code of Conduct, closing off certain fraternities to use of University facilities and resources, mandating that each fraternity have insurance coverage and name the Arizona Board of Regents and the University as additional insureds, requiring students to complete hazing prevention education, and instructing that students affirm the University hazing policy by oath or contract.

59.     By virtue of this, as well the above representations made to students and their families regarding hazing, these Defendants had a duty to act in a non-negligent manner with respect to stopping the misconduct of fraternities that were subject to their control.

60.     This duty includes, without limitation, the duty to implement meaningful anti-hazing measures to prevent foreseeable harm, the duty to enforce its policies regarding fraternity activities, the duty to act in a non-negligent manner with respect to stopping the misconduct of fraternity organizations, the duty to properly discipline students who violate the anti-hazing rules, and most importantly, the duty to provide a safe environment for students to live, socialize, and attend school.

61.     The Arizona Board of Regents and the University breached their duty to take all reasonable steps to protect students from hazing. Plaintiff was reliant upon these Defendants to uphold a strict policy against hazing to prevent foreseeable harm, specifically where these Defendants were aware of prior misconduct and hazing violations of the Chapter. Nonetheless, these Defendants failed to take reasonable measures to create and enforce a meaningful policy that prevents hazing before it occurs. Such lack of oversight contributed to the environment where

Plaintiff was more likely to be a victim of hazing. Further, Plaintiff was reliant upon these Defendants to routinely adapt and revise the hazing prevention policy in light of the recent history at universities nation-wide and the warnings given by students at the University.

62.     The Arizona Board of Regents and the University breached their duty by, inter alia, failing to provide adequate supervision of the pledging process and failing to be properly vigilant in seeing that supervision was sufficient to ensure the safety of students.

63.     These Defendants were or had reason to be aware of and understand how vulnerable students are to physical, mental, and emotional harm in connection with hazing activity. This belief is founded on the fact that the Defendants knew of past hazing incidents involving physical harm to students, had suspected that hazing could still be occurring, and common knowledge on college campuses that hazing is an ever-present threat to student wellbeing. If anything, these Defendants' knowledge of past hazing incidents, specifically those involving the Chapter, gives rise to a heightened duty of care in taking reasonable measures to prevent foreseeable harm.

64.     As a direct and proximate result of the Arizona Board of Regents' and the University's negligence, Plaintiff sustained serious injuries, mental anguish, emotional distress, and pain and suffering, some of which may be permanent in nature. Plaintiff suffered injury due to the inadequate response of these Defendants to the longstanding and very serious hazing problem that has plagued it for years.

65.     As a further direct and proximate result of the Arizona Board of Regents' and the University's negligence, Plaintiff incurred medical expenses and other expenses in an effort to relieve injuries caused by these Defendants, and Plaintiff will likely incur future medical expenses and other expenses in an effort to relieve injuries caused by these Defendants.

## COUNT 3 – NEGLIGENCE

### (Defendant Theta Chi Fraternity, Inc. )

66.     Plaintiff realleges and incorporates by reference all allegations in paragraphs 1-65, as though fully set forth therein.

67.     At all relevant times, Theta Chi exercised significant and ongoing control over the

Chapter and its officers and members. This included, but was not limited to, issuing a charter to the Chapter; requiring that the leadership of the Chapter attend training sessions; requiring that the logo for Theta Chi Fraternity and the official colors of Theta Chi Fraternity be used at the Chapter house and on various publications and paraphernalia of the Chapter; requiring that the Chapter and its members comply with the anti-hazing policies of Theta Chi Fraternity and the University; requiring that the Chapter plan and host social events in the name of Theta Chi Fraternity; reserving the right to discipline the Chapter and any members for conduct violations; controlling the manner in which new members are recruited and initiated by the Chapter; requiring the members and new initiates of the Chapter to pay initiation fees, dues, and taxes to Theta Chi Fraternity; requiring the members of the Chapter to learn the history, traditions, and rituals of Theta Chi Fraternity; and revoking the charter of the Chapter on or about November 19, 2019.

68.     As controlling member of the Chapter, Theta Chi owed and/or assumed a duty to Plaintiff to act in a non-negligent manner. This duty included, without limitation, the duty to ensure that hazing and dangerous conduct that creates a foreseeable risk of harm does not occur, the duty to manage and oversee membership operations and activities in a reasonable manner, the duty to provide a safe and secure environment, the duty to implement and enforce meaningful anti-hazing measures to prevent foreseeable harm, the duty to properly train the officers, chapter advisors and members of the Chapter so that they would not violate the rules and regulations of Theta Chi and the University, the duty to revoke the charter of the Chapter when it knew or should have known of repeated instances of unacceptable behavior, and the duty to visit the Chapter frequently enough in order to uncover the hazing activities that were occurring.

69.     Theta Chi breached its duty by knowingly permitting the Chapter to continue with conduct that included the dangerous and relentless hazing described above. Plaintiff was reliant upon this Defendant to uphold a strict policy against hazing to prevent foreseeable harm. However, this Defendant failed to take reasonable precautions and failed to institute reforms despite having the power and authority to do so.

70.     Theta Chi was aware or had reason to be aware of the foreseeable risk of serious harm that hazing posed to the Plaintiff. Dangerous misconduct by chapters of Theta Chi has

previously caused numerous injuries and deaths, including the hazing death of Philip Dhanens in 2012 at the California State University, Fresno and the hazing death of Alexander Beletsis in 2018 at the University of California, Santa Cruz.

71.     The Chapter has previously engaged in documented dangerous hazing, unlawful service of alcohol, disruption of University activities, and other misconduct which threatened the health and safety of students. Upon information and belief, Theta Chi has been aware of this misconduct and disciplinary action. This Defendant had knowledge of the Chapter's inability to manage itself safely and in keeping with the University's rules. This Defendant was aware or had reason to be aware of the concern that management of the Chapter lies with Officer Defendants who are poorly trained, unaware of the risks, and whose judgment is clouded by loyalty to their "brothers". Because Theta Chi and the Chapter have a history of hazing and other misconduct, it was reasonably foreseeable that the misconduct would continue without proper reforms and management from this Defendant.

72.     As a direct and proximate result of Theta Chi's negligence, Plaintiff sustained serious injuries, mental anguish, emotional distress, and pain and suffering, some of which may be permanent in nature.

73.     As a further direct and proximate result of Theta Chi's negligence, Plaintiff incurred medical expenses and other expenses in an effort to relieve injuries caused by this Defendant, and Plaintiff will likely incur future medical expenses and other expenses in an effort to relieve injuries caused by this Defendant.

## COUNT 4- NEGLIGENCE

**(Defendants Brenton, LaSalle, Lombard, Lymberis, Merrywell, Neuhaus, Palmieri,  Piro, Rusnak, Semenko, Slepian, and Tavakoly, collectively "Officer Defendants")**

74.     Plaintiff realleges and incorporates by reference all allegations in paragraphs 1-73, as though fully set forth therein.

75.     At all relevant times, the Constitution and Bylaws of Theta Chi Fraternity stated that the officers of the Chapter shall share responsibility for the overall compliance of the Chapter with the Bylaws, the Ritual, the Bylaws of the Chapter, and other applicable rules.

76.     The Officer Defendants had a duty to exercise a reasonable standard of care in seeing that the Chapter complies with the aforementioned rules, which includes Theta Chi's rule that no hazing practices are allowed or tolerated under any circumstances.

77.     The Officer Defendants breached this duty by failing to take reasonable measures to ensure that the Chapter is in compliance with the Constitution and Bylaws of Theta Chi and that the health and safety of members is safeguarded to the maximum extent possible.

78.     As a direct and proximate result of the Officer Defendants' negligence, Plaintiff sustained serious injuries, mental anguish, emotional distress, and pain and suffering, some of which may be permanent in nature.

79.     As a further direct and proximate result of the Officer Defendants' breach of their duties, Plaintiff incurred medical expenses and other expenses in an effort to relieve injuries caused by these Defendants, and Plaintiff will likely incur future medical expenses and other expenses in an effort to relieve injuries caused by these Defendants.

## COUNT 5 – NEGLIGENCE

### (Defendant Tyler Austin)

**(Defendants Brenton, LaSalle, Lombard, Lymberis, Merrywell, Neuhaus, Palmieri,  Piro, Rusnak, Semenko, Slepian, and Tavakoly, collectively "Officer Defendants")**

80.     Plaintiff realleges and incorporates by reference all allegations in paragraphs 1-79, as though fully set forth therein.

81.     Defendant Austin knew or had reason to know that by his conduct, he had caused harm to Plaintiff and placed him in a position of peril, and he therefore owed Plaintiff a duty to exercise reasonable care to protect him and prevent further harm.

82.     Defendant Austin breached this duty by continuing to haze Plaintiff and forcing him to perform calisthenics on broken glass and foul-smelling trash after his physical and emotional condition had declined, and by failing to protect or procure help for Plaintiff after it became clear he was injured.

83.     As a direct and proximate result of the Defendant Austin's actions of placing Plaintiff in a position of harm, and breach of his duties to protect Plaintiff and prevent further

harm, Plaintiff sustained serious injuries, mental anguish, emotional distress, and pain and suffering, some of which may be permanent in nature.

84.     As a further direct and proximate result of Defendant Austin's breach of his duties, Plaintiff incurred medical expenses and other expenses in an effort to relieve injuries caused by this Defendant, and Plaintiff will likely incur future medical expenses and other expenses in an effort to relieve injuries caused by this Defendant.

85.     The Officer Defendants are jointly and severally liable for the acts and omissions of Defendant Austin as alleged herein, as the Constitution and Bylaws of Theta Chi state that the officers shall share responsibility for the overall compliance of the Chapter with the Bylaws, the Ritual, the Bylaws of the Chapter, and other applicable rules.

## COUNT 6 – NEGLIGENT SUPERVISION

### (Defendant Theta Chi Fraternity, Inc.)

86.     Plaintiff realleges and incorporates by reference all allegations in paragraphs 1-85, as though fully set forth therein.

87.     Theta Chi conducts its activities through its chapters and their members at universities, to include members at the Chapter.

88.     Theta Chi has a non-delegable duty to exercise a reasonable standard of care in the monitoring and supervising the conduct of its chapters and members, to include members at the Chapter.

89.     Theta Chi was negligent in its monitoring and supervising of the Chapter and its members. Without limitation, Theta Chi failed to monitor and supervise membership operations and activities in a reasonable manner, failed to see that a safe and secure environment was being provided, failed to reasonably monitor and supervise the officers, chapter advisors and members of the Chapter so that they would not violate the rules and regulations of Theta Chi  and the University, failed to revoke the charter of the Chapter when it knew or should have known of repeated instances of unacceptable behavior, and failed to properly conduct supervisory visits of the Chapter frequently enough in order to uncover the hazing activities that were occurring.

90.     As a result of this conduct, Plaintiff sustained serious injuries, mental anguish,

1   emotional distress, and pain and suffering, some of which may be permanent in nature.

2   91.   As a further direct and proximate result of this Defendant's breach of its duties,

3   Plaintiff incurred medical expenses and other expenses in an effort to relieve injuries caused by

4   this Defendant, and Plaintiff will likely incur future medical expenses and other expenses in an

5   effort to relieve injuries caused by this Defendant.

6   ## COUNT 7 – BATTERY

7   ### (Defendant Tyler Austin)

8   **(Defendants Brenton, LaSalle, Lombard, Lymberis, Merrywell, Neuhaus, Palmieri,  Piro,**

9   **Rusnak, Semenko, Slepian, and Tavakoly, collectively "Officer Defendants")**

10   92.   Plaintiff realleges and incorporates by reference all allegations in paragraphs 1-91,

11   as though fully set forth therein.

12   93.   Defendant Austin intended to cause harmful or offensive contact with Plaintiff or

13   intended to cause Plaintiff apprehension of an immediate or harmful contact.

14   94.   Defendant Austin did in fact cause a harmful or offensive contact with Plaintiff.

15   95.   Defendant Austin caused serious injuries and symptoms to Plaintiff, including but

16   not limited to, severe pain and sensitivity in eyes, scarring, infection, and burn to the eyes, cuts to

17   his palms and elbows, infection in his blood, and deterioration and blurriness of vision.

18   96.   Defendant Austin's actions were willful and malicious and done with an evil mind,

19   or were done with reckless indifference to the results of or to the rights and safety of Plaintiff,

20   thereby entitling Plaintiff to an award of punitive damages.

21   97.   The Officer Defendants are jointly and severally liable for the acts and omissions of

22   Defendant Austin as alleged herein, as the Constitution and Bylaws of Theta Chi state that the

23   officers shall share responsibility for the overall compliance of the Chapter with the Bylaws, the

24   Ritual, the Bylaws of the Chapter, and other applicable rules.

25   ## COUNT 8 – ASSAULT

26   ### (Defendant Tyler Austin)

27   **(Defendants Brenton, LaSalle, Lombard, Lymberis, Merrywell, Neuhaus, Palmieri,  Piro,**

28   **Rusnak, Semenko, Slepian, and Tavakoly, collectively "Officer Defendants")**

CTSC|law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

98.    Plaintiff realleges and incorporates by reference all allegations in paragraphs 1-97, as though fully set forth therein.

99.    Defendant Austin intended to cause harmful or offensive contact with Plaintiff or intended to cause Plaintiff apprehension of an immediate or harmful contact.

100.    Defendant Austin did in fact cause Plaintiff to apprehend immediate harmful or offensive contact.

101.    Defendant Austin caused serious injuries and symptoms to Plaintiff, including but not limited to, severe pain and sensitivity in eyes, scarring, infection, and burn to the eyes, cuts to his palms and elbows, infection in his blood, and deterioration and blurriness of vision.

102.    Defendant Austin's actions were willful and malicious and done with an evil mind, or were done with reckless indifference to the results of or to the rights and safety of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

103.    The Officer Defendants are jointly and severally liable for the acts and omissions of Defendant Austin as alleged herein, as the Constitution and Bylaws of Theta Chi state that the officers shall share responsibility for the overall compliance of the Chapter with the Bylaws, the Ritual, the Bylaws of the Chapter, and other applicable rules.

## COUNT 9 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Defendant Tyler Austin)

### (Defendants Brenton, LaSalle, Lombard, Lymberis, Merrywell, Neuhaus, Palmieri, Piro, Rusnak, Semenko, Slepian, and Tavakoly, collectively "Officer Defendants")

104.    Plaintiff realleges and incorporates by reference all allegations in paragraphs 1-103, as though fully set forth therein.

105.    The conduct of Defendant Austin was extreme and outrageous.

106.    Defendant Austin either intended to cause emotional distress to Plaintiff or recklessly disregarded the near certainty that such distress would result from his conduct.

107.    Severe emotional distress did in fact result from Defendant Austin's conduct.

108.    Defendant Austin's actions were willful and malicious and done with an evil mind, or were done with reckless indifference to the results of or to the rights and safety of Plaintiff,

1 thereby entitling Plaintiff to an award of punitive damages.

2  109. The Officer Defendants are jointly and severally liable for the acts and omissions of

3 Defendant Austin as alleged herein, as the Constitution and Bylaws of Theta Chi state that the

4 officers shall share responsibility for the overall compliance of the Chapter with the Bylaws, the

5 Ritual, the Bylaws of the Chapter, and other applicable rules.

6          **COUNT 9 – NEGLIGENCE PER SE**

7     **(Defendants University of Arizona and Arizona Board of Regents)**

8  110. Plaintiff realleges and incorporates by reference all allegations in paragraphs 1-109,

9 as though fully set forth therein.

10  111. Pursuant to A.R.S. § 15-2301, the University is a public institution and is thus under

11 a statutory duty to "adopt, post, and enforce a hazing prevention policy." This includes the duty to

12 adopt, post, and enforce "a statement that hazing is prohibited", as well as "a statement that all

13 students, teachers, and staff shall take reasonable measures within the scope of their individual

14 authority to prevent violations of the hazing prevention policy." The duty to properly uphold a

15 hazing prevention policy and to take all reasonable protective measures arose from the legal

16 relationship created by statute between the University and Plaintiff.

17  112. At all relevant times, Plaintiff was a student at the University, and therefore a

18 member of the class of persons for whose protection A.R.S. § 15-2301 was specifically adopted to

19 protect.

20  113. Plaintiff suffered acts of hazing in connection with membership in Theta Chi

21 Fraternity and the Chapter that caused physical injury, mental harm, and personal degradation to

22 Plaintiff. This conduct was of the nature that A.R.S. § 15-2301 was designed to prevent.

23  114. The physical, mental, and emotional damages and injuries resulting from the hazing

24 of Plaintiff were the type of injuries that A.R.S. § 15-2301 was designed to prevent.

25  115. The Arizona Board of Regents and the University breached their statutory duty to

26 enforce a hazing prevention policy and to take all reasonable steps to prevent violations of the

27 hazing prevention policy. Plaintiff was reliant upon these Defendants to uphold a strict policy

28 against hazing to prevent foreseeable harm. Nonetheless, these Defendants failed to take

reasonable measures to create and enforce a meaningful policy that prevents hazing before it occurs. Such lack of oversight contributed to the environment where Plaintiff was more likely to be a victim of hazing. Further, Plaintiff was reliant upon these Defendants to routinely adapt and revise the hazing prevention policy in light of the recent history at universities nation-wide and the warnings given by students at the University.

116.   These Defendants were or had reason to be aware of and understand that hazing would continue without reform and proper enforcement of the University's hazing policy. This belief is founded on the fact that the Defendants knew of prior hazing incidents involving physical harm to members of the Chapter and other fraternities at the University, had suspected that hazing could still be occurring, and common knowledge on college campuses that hazing is an ever-present threat to student wellbeing.

117.   As a direct and proximate result of the Arizona Board of Regents' and the University's negligence, Plaintiff sustained serious injuries, mental anguish, emotional distress, and pain and suffering, some of which may be permanent in nature. Plaintiff suffered injury due to the inadequate response of these Defendants to the longstanding and very serious hazing problem that has plagued it for years.

118.   As a further direct and proximate result of the Arizona Board of Regents' and the University's negligence, Plaintiff incurred medical expenses and other expenses in an effort to relieve injuries caused by these Defendants, and Plaintiff will likely incur future medical expenses and other expenses in an effort to relieve injuries caused by these Defendants.

**JURY DEMAND**

Plaintiff demands trial by jury.

///

///

///

///

///

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays the Court for judgment against the Defendants, jointly and severally, for an amount no less than $1,000,000.00, together with legal interest, an award of reasonable attorneys' fees and costs, and such other relief as the Court may deem just and proper under the circumstances.

DATED: April 10, 2020

**CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**

By _____

ROBERT W. THOMPSON
Attorney for Plaintiff
**HAYDEN ROLETTER**

COMPLAINT

# EXHIBIT A



**Robert W. Thompson** | Partner
2601 Main Street, Suite 800, Irvine, California 92614
Tel: (949) 261-CTSC(2872) | Fax: (949) 261-6060
E-mail: rthompson@ctsclaw.com · Website: www.ctsclaw.com

**<u>VIA CERTIFIED MAIL</u>**

August 8, 2019

Arizona Board of Regents
Attn: Kate Linder, Secretary to the Board
2020 N. Central Ave., Suite 230
Phoenix, AZ 85004-4593

    Re: A.R.S. § 12-821.01 – Notice of Claims
       *The University of Arizona*

To Whom It May Concern:

   This notice of a governmental claim and intention to sue the University of Arizona is presented by the law firm of Callahan, Thompson, Sherman & Caudill, LLP, attorneys at law, on behalf of Claimant Hayden Roletter (hereinafter "Claimant"). The Claimant suffered injury in connection with a hazing incident at the Beta Iota Chapter of Theta Chi fraternity on April 12, 2019 due to the University of Arizona's failure to adequately supervise and regulate the activities and behavior of fraternities on its campus. He seeks an award of damages reasonably calculated to compensate for these injuries.

   Attached is a copy of the Notice of Claim by the Claimant against the University of Arizona. If for any reason you believe this Notice of Claim is not in compliance with A.R.S. § 12-821.01 or if additional facts/information is needed, please contact our office.

## GOVERNMENT CLAIM: *ROLETTER V. THE UNIVERSITY OF ARIZONA*

### I. FACTUAL BASIS FOR CLAIM

Claimant is Hayden Roletter (hereinafter "Hayden"). Hayden was a student at the University of Arizona ("UA") in Tucson, and is from Orange County, California. He entered UA as an environmental science major and was also active on UA's club water polo team. In April of 2019 Hayden was in the spring semester of his first year at UA.

Hayden became interested in joining a fraternity shortly after beginning the spring semester. UA is home to 19 general men's fraternities, each represented and governed by UA's Interfraternity Council (IFC). UA regards its Greek life program as one of the most diverse, exciting, and well-respected systems in the country, and claims that hazing within the program is strictly prohibited. However, prior to April 2019, UA already had a history of hazing. Indeed, at the time UA had already conferred Loss of Recognition Status on the local chapters of Alpha Sigma Phi, Delta Chi, and Delta Sigma Phi due to hazing activity.

UA encourages all interested students to register for IFC recruitment and consider membership in a local chapter. Hayden attended IFC interest meetings on campus, where he was given an abundance of information about UA's zero-tolerance for all hazing activity. At the meetings, UA told attendees that the IFC fraternities had each signed the school's anti-hazing policy.

Hayden went through fraternity recruitment shortly thereafter, which is planned and organized by the University's IFC. He accepted a bid at Theta Chi fraternity at the end of the recruitment process along with 21-25 other new members.

The Beta Iota Chapter of Theta Chi fraternity was established at UA in 1941. However, in May of 2015 UA ordered the chapter to cease all activity due to multiple hazing violations in which new initiates were struck by paddles. The Dean of Students investigated the activities of the chapter to determine that such hazing practices were not isolated incidents, but rather initiation traditions that occurred every semester. UA imposed a Loss of Recognition sanction upon the chapter, meaning that the chapter could not apply for university recognition until the fall of 2019. In the fall of 2019 a UA student died during the weeks of pledging the Beta Iota Chapter. However, the cause of death was not released and Hayden was not told about the death until after he accepted a bid.

Although Hayden accepted a bid to join the Beta Iota Chapter of Theta Chi fraternity, he still had to complete the pledge process to become an official member. He was told by the Pledge Marshall, Blake Brenton, that the pledge period would take place over the course of seven weeks, and would entail various chores and tasks, such as cleaning the fraternity house and interviewing the older members. However, Hayden did not realize that the process would also involve relentless physical and psychological abuse. He was obligated to be on-call and available at all hours so that he could appear for unscheduled meetings and grueling workouts. Hayden and fellow initiates were required to run, and do push-ups, wall sits, and planks while being yelled at by the older members and quizzed on the history of the fraternity. When Hayden or another

initiate failed to answer correctly, the older members would kick them in the chest and head. This occurred numerous times. The Pledge Marshall and older members also dumped trash on Hayden's head and required him to drink foul concoctions made of things found in the trash. Hayden also vividly recalls being led into a dark room on multiple occasions with his fellow initiates. There, the Pledge Marshall and older members would scream at and kick the initiates while playing loud music, including songs from the Nazi Party. Many of these hazing activities would also take place at the weekly chapter meeting that all new initiates were required to attend.

The Pledge Marshall and older members threatened that all initiates would be beat up if the hazing activities at Theta Chi were exposed. In fact, Hayden received a message one night from the Pledge Marshall to immediately report to the chapter house at 502 N Campbell Ave, Tucson, AZ, because someone revealed that hazing was occurring. There, the older members shouted at Hayden and the initiates to do various exercises, including planks, while being kicked in the chest. After hours of physical and psychological torment, the Pledge Marshall told the group of initiates that no one actually reported the fraternity. The Pledge Marshall said that the hoax was designed to show the initiates the punishment they would receive if they spoke about any hazing activity.

*April 12, 2019*

The events giving rise to Hayden's horrific injuries occurred on April 12, 2019, while he was attending a meeting at the chapter house with fellow initiates and current members. While most of the chapter's regular meetings were scheduled in advance, Hayden had no notice that this particular meeting was happening.

Upon arriving at the chapter house, Hayden's cell phone was taken away and he was ushered into a dark room with the other initiates. The Chapter Social Chair, Matt Palmieri, then entered the room with three other older members and yelled for the initiates to lie face down on the ground. Tyler Austin, one of the older members, then picked up the heads and bodies of some of the initiates and slammed them onto the ground. The initiates were then forced to say the Theta Chi creed while an older member choked them.

Tyler then yelled for Hayden to do a wall sit as he interrogated Hayden with questions as to what the hometowns of various chapter members were. When Hayden told Tyler that he could not remember where Tyler's hometown was, Tyler filled a shot glass with Tapatio hot sauce and yelled for Hayden to drink it as punishment. Hayden reluctantly complied. Tyler continued to interrogate Hayden, and Hayden told him that he still could not remember where Tyler was from. Hayden then watched Tyler fill a shot glass with El Yucateco Habanero Sauce. The Sauce has received a Scoville scale rating of over 5,000, which is a measurement of the pungency of chili peppers. With no warning, Tyler aimed the filled glass at Hayden's face from mere inches away. He then swung the glass to unleash the sauce into both of Hayden's eyes. Hayden immediately screamed in pain and dropped to the ground.

The burning sensation in Hayden's eyes was so agonizing that he was unable to stand or stop screaming for a few moments after the incident. He tried to open his eyes as he was on the ground writhing in severe pain, but he was unable to. In the moment, the initial intensity of pain

caused Hayden to believe that his eyes were seriously damaged, or worse, blind. Still screaming, Hayden ran to the chapter's bathroom in hopes that rinsing the sauce out of his eyes would ease the severity of pain and potential of permanent impairment. He immediately washed out his eyes and spent fifty minutes in the chapter's bathroom tending to the injury.

Hayden then heard a bang on the bathroom door and a loud voice scream for him to stop being weak. The voice screamed that the older members would drag him back to the room if he did not rejoin them within two minutes. Hayden continued to experience a painful burning sensation that became unbearable if he opened his eyes or blinked. However, he thought that it would be better to keep his eyes closed and rejoin the group on his own accord than for the older members to confront him in the bathroom.

Hayden re-entered the dark room in agony and with his eyes nearly closed shut. He then heard the voices of Tyler and Matt shout for him to join the initiates in doing pushups. When he bent close to the floor he realized that the older members had scattered pieces of broken glass on the floor for the initiates to do the pushups on. Hayden's palms and elbows bled from the shards of glass as Tyler and Matt ordered the initiates to continue the exercise.

Tyler, Matt, and the other older members then dismissed the initiates and gave them back their cell phones. Hayden checked the time on the cell phone and it was approximately 5 a.m the following morning. He left the chapter house, stumbled to his dorm, and fell asleep.

*April 13, 2019 – June 24, 2019*

The pain, swelling, and burning sensation in Hayden's eyes persisted the day following the hazing event at the Beta Iota Chapter house. He awoke to sharp pain and pus oozing out of his right eye.

Hayden was concerned that any injury or pain might significantly worsen if left untreated, so he visited NextCare Urgent Care Tucson that morning to speak with a medical professional. The urgent care doctor determined that the lid, conjunctiva, and sclera of Hayden's right eye were infected, and that the eye contracted chemical conjunctivitis. The doctor prescribed eyedrops to use for at-home relief.

On April 15, 2019, Hayden woke up in the middle of the night, screaming in unbearable pain. His right eye was swollen, sealed shut with dried pus, and he was unable to open it. He immediately went to Banner University Medical Center Tucson, as his condition and symptoms had significantly worsened. The Medical Center doctors administered morphine to relieve Hayden's severe pain. They determined that Hayden developed an infection in his blood from the cuts on his palms and elbows and prescribed antibiotics.

On April 17, 2019, Hayden went to Hodges Eye Care and Surgical Center in Tucson, Arizona, for expert consultation on the status of his injury. Despite regular use of the eyedrops and antibiotics, Hayden's pain had not subsided and the vision in his right eye had not improved. A slit lamp examination conducted by the optometrist revealed the chemosis and injection of the conjunctiva on the right eye, as well as the superficial punctate keratitis of the cornea on the right

eye. The visual acuity of the right eye was measured at 20/200. The optometrist concluded that the right eye was infected with toxic conjunctivitis, and Hayden was prescribed oral antibiotics.

On April 18, 2019, Hayden returned to Hodges Eye Care and Surgical Center for a follow up examination. Again, the optometrist conducted a slit lamp examination to check the condition of Hayden's eyes. The examination confirmed the chemosis and injection of the conjunctiva on the right eye. The examination also showed a 100% epithelial defect of the cornea on the right eye. The optometrist maintained that the right eye was infected with toxic conjunctivitis, and he applied a bandage contact lens to the eye.

On May 14, 2019, Hayden was treated by Michael Cook, optometrist at i2ioptometry in Laguna Beach, California. Hayden's right eye felt dry, itchy, swollen, blurred and still in considerable pain. Dr. Cook measured the visual acuity of the eye at 20/150. Dr. Cook conducted a slit lamp examination, which showed an injury of conjunctiva, corneal abrasion, and corneal deformities of the right eye. He referred Hayden to Dr. Raoof of NVision Eye Centers in Laguna Hills, California, for further evaluation and treatment.

On May 17, 2019, after conducting an external examination and a slit lamp examination, Dr. Raoof determined that Hayden's right eye had suffered an acid chemical burn. Hayden authorized Dr. Raoof to perform an amniotic membrane placement procedure in hopes that the procedure would heal the wound. Dr. Raoof placed a dehydrated amniotic membrane in the right eye, followed by a bandage contact lens, and removed the eyelid speculum. Hayden was prescribed antibiotics and eyedrops following the procedure.

From May 22, 2019 to June 24, 2019, Hayden had five follow-up appointments with Dr. Raoof. At the most recent appointment on June 24, 2019, a slit lamp examination showed that injection and chemosis of the cornea of the right eye was still present.

## II. AMOUNT OF CLAIM

The sum certain amount for which the University of Arizona may settle the claim is $1,000,000.00.

## III. FACTUAL BASIS FOR AMOUNT

It is difficult to measure the damage that UA has done in failing to protect Hayden from hazing. UA was or had reason to be aware of how vulnerable students are to physical, mental, and emotional harm in connection with hazing activity. UA failed to provide adequate supervision of the pledging process and failed to be properly vigilant in seeing that supervision was sufficient to ensure the safety of students. UA's failure to take reasonable steps to protect students from known hazing activity has caused Hayden severe injury.

As addressed above, Hayden has incurred and will incur future medical expenses to treat the damage to his eye. Hayden's right eye is visibly scarred, and his eyesight is blurry. He does not know if the impairment will be permanent. He cannot drive at night, and even driving during

the daytime is painful due to sunlight sensitivity. Hayden has been unable to play water polo or enjoy other daytime outdoor activities. Dr. Raoof has continued to prescribe eyedrops for Hayden's right eye, and he has recommended that Hayden undergo a superficial keratectomy to remove the scarred tissue on the cornea.

Further, Hayden is no longer enrolled as a student at UA due to his physical condition and ongoing emotional distress from the incident. He has suffered, and continues to suffer, stress, anxiety, embarrassment, and loss of appetite, as a result of the incident and his abuse during the pledge process. This has severely impacted Hayden's academic performance and ability to focus. Hayden has also received numerous hostile and aggressive text messages from Theta Chi members. Hayden believes that he would be verbally and physically assaulted by the Theta Chi members if he returned to UA. There is no telling how long it will take for Hayden to physically and emotionally recover from the incident.



**Robert W. Thompson** | Partner
2601 Main Street, Suite 800, Irvine, California 92614
Tel: (949) 261-CTSC(2872) | Fax: (949) 261-6060
E-mail: rthompson@ctsclaw.com · Website: www.ctsclaw.com

## VIA CERTIFIED MAIL

August 8, 2019

State of Arizona
c/o Mark Brnovich, Esq.
Attorney General of the State of Arizona
1275 West Washington Street
Phoenix, AZ 85007-2926

      Re:    A.R.S. § 12-821.01 – Notice of Claims
           *The University of Arizona*

To Whom It May Concern:

      This notice of a governmental claim and intention to sue the University of Arizona is presented by the law firm of Callahan, Thompson, Sherman & Caudill, LLP, attorneys at law, on behalf of Claimant Hayden Roletter (hereinafter "Claimant"). The Claimant suffered injury in connection with a hazing incident at the Beta Iota Chapter of Theta Chi fraternity on April 12, 2019 due to the University of Arizona's failure to adequately supervise and regulate the activities and behavior of fraternities on its campus. He seeks an award of damages reasonably calculated to compensate for these injuries.

      Attached is a copy of the Notice of Claim by the Claimant against the University of Arizona. If for any reason you believe this Notice of Claim is not in compliance with A.R.S. § 12-821.01 or if additional facts/information is needed, please contact our office.

## GOVERNMENT CLAIM: *ROLETTER V. THE UNIVERSITY OF ARIZONA*

### I. FACTUAL BASIS FOR CLAIM

Claimant is Hayden Roletter (hereinafter "Hayden"). Hayden was a student at the University of Arizona ("UA") in Tucson, and is from Orange County, California. He entered UA as an environmental science major and was also active on UA's club water polo team. In April of 2019 Hayden was in the spring semester of his first year at UA.

Hayden became interested in joining a fraternity shortly after beginning the spring semester. UA is home to 19 general men's fraternities, each represented and governed by UA's Interfraternity Council (IFC). UA regards its Greek life program as one of the most diverse, exciting, and well-respected systems in the country, and claims that hazing within the program is strictly prohibited. However, prior to April 2019, UA already had a history of hazing. Indeed, at the time UA had already conferred Loss of Recognition Status on the local chapters of Alpha Sigma Phi, Delta Chi, and Delta Sigma Phi due to hazing activity.

UA encourages all interested students to register for IFC recruitment and consider membership in a local chapter. Hayden attended IFC interest meetings on campus, where he was given an abundance of information about UA's zero-tolerance for all hazing activity. At the meetings, UA told attendees that the IFC fraternities had each signed the school's anti-hazing policy.

Hayden went through fraternity recruitment shortly thereafter, which is planned and organized by the University's IFC. He accepted a bid at Theta Chi fraternity at the end of the recruitment process along with 21-25 other new members.

The Beta Iota Chapter of Theta Chi fraternity was established at UA in 1941. However, in May of 2015 UA ordered the chapter to cease all activity due to multiple hazing violations in which new initiates were struck by paddles. The Dean of Students investigated the activities of the chapter to determine that such hazing practices were not isolated incidents, but rather initiation traditions that occurred every semester. UA imposed a Loss of Recognition sanction upon the chapter, meaning that the chapter could not apply for university recognition until the fall of 2019. In the fall of 2019 a UA student died during the weeks of pledging the Beta Iota Chapter. However, the cause of death was not released and Hayden was not told about the death until after he accepted a bid.

Although Hayden accepted a bid to join the Beta Iota Chapter of Theta Chi fraternity, he still had to complete the pledge process to become an official member. He was told by the Pledge Marshall, Blake Brenton, that the pledge period would take place over the course of seven weeks, and would entail various chores and tasks, such as cleaning the fraternity house and interviewing the older members. However, Hayden did not realize that the process would also involve relentless physical and psychological abuse. He was obligated to be on-call and available at all hours so that he could appear for unscheduled meetings and grueling workouts. Hayden and fellow initiates were required to run, and do push-ups, wall sits, and planks while being yelled at by the older members and quizzed on the history of the fraternity. When Hayden or another

initiate failed to answer correctly, the older members would kick them in the chest and head. This occurred numerous times. The Pledge Marshall and older members also dumped trash on Hayden's head and required him to drink foul concoctions made of things found in the trash. Hayden also vividly recalls being led into a dark room on multiple occasions with his fellow initiates. There, the Pledge Marshall and older members would scream at and kick the initiates while playing loud music, including songs from the Nazi Party. Many of these hazing activities would also take place at the weekly chapter meeting that all new initiates were required to attend.

The Pledge Marshall and older members threatened that all initiates would be beat up if the hazing activities at Theta Chi were exposed. In fact, Hayden received a message one night from the Pledge Marshall to immediately report to the chapter house at 502 N Campbell Ave, Tucson, AZ, because someone revealed that hazing was occurring. There, the older members shouted at Hayden and the initiates to do various exercises, including planks, while being kicked in the chest. After hours of physical and psychological torment, the Pledge Marshall told the group of initiates that no one actually reported the fraternity. The Pledge Marshall said that the hoax was designed to show the initiates the punishment they would receive if they spoke about any hazing activity.

*April 12, 2019*

The events giving rise to Hayden's horrific injuries occurred on April 12, 2019, while he was attending a meeting at the chapter house with fellow initiates and current members. While most of the chapter's regular meetings were scheduled in advance, Hayden had no notice that this particular meeting was happening.

Upon arriving at the chapter house, Hayden's cell phone was taken away and he was ushered into a dark room with the other initiates. The Chapter Social Chair, Matt Palmieri, then entered the room with three other older members and yelled for the initiates to lie face down on the ground. Tyler Austin, one of the older members, then picked up the heads and bodies of some of the initiates and slammed them onto the ground. The initiates were then forced to say the Theta Chi creed while an older member choked them.

Tyler then yelled for Hayden to do a wall sit as he interrogated Hayden with questions as to what the hometowns of various chapter members were. When Hayden told Tyler that he could not remember where Tyler's hometown was, Tyler filled a shot glass with Tapatio hot sauce and yelled for Hayden to drink it as punishment. Hayden reluctantly complied. Tyler continued to interrogate Hayden, and Hayden told him that he still could not remember where Tyler was from. Hayden then watched Tyler fill a shot glass with El Yucateco Habanero Sauce. The Sauce has received a Scoville scale rating of over 5,000, which is a measurement of the pungency of chili peppers. With no warning, Tyler aimed the filled glass at Hayden's face from mere inches away. He then swung the glass to unleash the sauce into both of Hayden's eyes. Hayden immediately screamed in pain and dropped to the ground.

The burning sensation in Hayden's eyes was so agonizing that he was unable to stand or stop screaming for a few moments after the incident. He tried to open his eyes as he was on the ground writhing in severe pain, but he was unable to. In the moment, the initial intensity of pain

caused Hayden to believe that his eyes were seriously damaged, or worse, blind. Still screaming, Hayden ran to the chapter's bathroom in hopes that rinsing the sauce out of his eyes would ease the severity of pain and potential of permanent impairment. He immediately washed out his eyes and spent fifty minutes in the chapter's bathroom tending to the injury.

Hayden then heard a bang on the bathroom door and a loud voice scream for him to stop being weak. The voice screamed that the older members would drag him back to the room if he did not rejoin them within two minutes. Hayden continued to experience a painful burning sensation that became unbearable if he opened his eyes or blinked. However, he thought that it would be better to keep his eyes closed and rejoin the group on his own accord than for the older members to confront him in the bathroom.

Hayden re-entered the dark room in agony and with his eyes nearly closed shut. He then heard the voices of Tyler and Matt shout for him to join the initiates in doing pushups. When he bent close to the floor he realized that the older members had scattered pieces of broken glass on the floor for the initiates to do the pushups on. Hayden's palms and elbows bled from the shards of glass as Tyler and Matt ordered the initiates to continue the exercise.

Tyler, Matt, and the other older members then dismissed the initiates and gave them back their cell phones. Hayden checked the time on the cell phone and it was approximately 5 a.m the following morning. He left the chapter house, stumbled to his dorm, and fell asleep.

*April 13, 2019 – June 24, 2019*

The pain, swelling, and burning sensation in Hayden's eyes persisted the day following the hazing event at the Beta Iota Chapter house. He awoke to sharp pain and pus oozing out of his right eye.

Hayden was concerned that any injury or pain might significantly worsen if left untreated, so he visited NextCare Urgent Care Tucson that morning to speak with a medical professional. The urgent care doctor determined that the lid, conjunctiva, and sclera of Hayden's right eye were infected, and that the eye contracted chemical conjunctivitis. The doctor prescribed eyedrops to use for at-home relief.

On April 15, 2019, Hayden woke up in the middle of the night, screaming in unbearable pain. His right eye was swollen, sealed shut with dried pus, and he was unable to open it. He immediately went to Banner University Medical Center Tucson, as his condition and symptoms had significantly worsened. The Medical Center doctors administered morphine to relieve Hayden's severe pain. They determined that Hayden developed an infection in his blood from the cuts on his palms and elbows and prescribed antibiotics.

On April 17, 2019, Hayden went to Hodges Eye Care and Surgical Center in Tucson, Arizona, for expert consultation on the status of his injury. Despite regular use of the eyedrops and antibiotics, Hayden's pain had not subsided and the vision in his right eye had not improved. A slit lamp examination conducted by the optometrist revealed the chemosis and injection of the conjunctiva on the right eye, as well as the superficial punctate keratitis of the cornea on the right

eye. The visual acuity of the right eye was measured at 20/200. The optometrist concluded that the right eye was infected with toxic conjunctivitis, and Hayden was prescribed oral antibiotics.

On April 18, 2019, Hayden returned to Hodges Eye Care and Surgical Center for a follow up examination. Again, the optometrist conducted a slit lamp examination to check the condition of Hayden's eyes. The examination confirmed the chemosis and injection of the conjunctiva on the right eye. The examination also showed a 100% epithelial defect of the cornea on the right eye. The optometrist maintained that the right eye was infected with toxic conjunctivitis, and he applied a bandage contact lens to the eye.

On May 14, 2019, Hayden was treated by Michael Cook, optometrist at i2ioptometry in Laguna Beach, California. Hayden's right eye felt dry, itchy, swollen, blurred and still in considerable pain. Dr. Cook measured the visual acuity of the eye at 20/150. Dr. Cook conducted a slit lamp examination, which showed an injury of conjunctiva, corneal abrasion, and corneal deformities of the right eye. He referred Hayden to Dr. Raoof of NVision Eye Centers in Laguna Hills, California, for further evaluation and treatment.

On May 17, 2019, after conducting an external examination and a slit lamp examination, Dr. Raoof determined that Hayden's right eye had suffered an acid chemical burn. Hayden authorized Dr. Raoof to perform an amniotic membrane placement procedure in hopes that the procedure would heal the wound. Dr. Raoof placed a dehydrated amniotic membrane in the right eye, followed by a bandage contact lens, and removed the eyelid speculum. Hayden was prescribed antibiotics and eyedrops following the procedure.

From May 22, 2019 to June 24, 2019, Hayden had five follow-up appointments with Dr. Raoof. At the most recent appointment on June 24, 2019, a slit lamp examination showed that injection and chemosis of the cornea of the right eye was still present.

## II. AMOUNT OF CLAIM

The sum certain amount for which the University of Arizona may settle the claim is $1,000,000.00.

## III. FACTUAL BASIS FOR AMOUNT

It is difficult to measure the damage that UA has done in failing to protect Hayden from hazing. UA was or had reason to be aware of how vulnerable students are to physical, mental, and emotional harm in connection with hazing activity. UA failed to provide adequate supervision of the pledging process and failed to be properly vigilant in seeing that supervision was sufficient to ensure the safety of students. UA's failure to take reasonable steps to protect students from known hazing activity has caused Hayden severe injury.

As addressed above, Hayden has incurred and will incur future medical expenses to treat the damage to his eye. Hayden's right eye is visibly scarred, and his eyesight is blurry. He does not know if the impairment will be permanent. He cannot drive at night, and even driving during

the daytime is painful due to sunlight sensitivity. Hayden has been unable to play water polo or enjoy other daytime outdoor activities. Dr. Raoof has continued to prescribe eyedrops for Hayden's right eye, and he has recommended that Hayden undergo a superficial keratectomy to remove the scarred tissue on the cornea.

Further, Hayden is no longer enrolled as a student at UA due to his physical condition and ongoing emotional distress from the incident. He has suffered, and continues to suffer, stress, anxiety, embarrassment, and loss of appetite, as a result of the incident and his abuse during the pledge process. This has severely impacted Hayden's academic performance and ability to focus. Hayden has also received numerous hostile and aggressive text messages from Theta Chi members. Hayden believes that he would be verbally and physically assaulted by the Theta Chi members if he returned to UA. There is no telling how long it will take for Hayden to physically and emotionally recover from the incident.